**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 14-209 (TSC) |
| | ) | |
| RYAN HARSHA, | ) | Sentencing Date: December 22, 2014 |
| | ) | |
| Defendant. | ) | |

**MR. RYAN HARSHA'S MEMORANDUM IN AID OF SENTENCING**
**AND OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

Defendant, Mr. Ryan Harsha, through undersigned counsel, respectfully submits this Memorandum In Aid Of Sentencing and Objections to Presentence Investigation Report ("PSR").

Ryan Harsha is a fundamentally decent person who, due to depression and a serious substance abuse problem, has over the last several years allowed his life to get badly off track. This case has been an important wake up call for Mr. Harsha that he needs to put his affairs (most notably his legal and moral affairs) in order and begin a new and positive chapter in his life. Mr. Harsha has received the message loud and clear that he cannot continue to take advantage of others or the system.

Based on the PSR, as well as counsel's conversations with Mr. Harsha and his loved ones, there is no question Mr. Harsha has the ability and desire to live a real, law-abiding life. Mr. Harsha's cooperation with the government and his work over the last several months tutoring fellow inmates at the D.C. Jail have been a very good start. It is also significant that Mr. Harsha will emerge from his sentence in this case with an established support system, i.e., his girlfriend and her six-year-old daughter, Gretchen, to whom Mr. Harsha acts as a surrogate father.

Notably, having done four months' imprisonment at the D.C. Jail, Mr. Harsha has already

experienced significantly harsher punishment than most defendants convicted of his crime, or who are in his category under the Sentencing Guidelines.  Defendants in Zone B (which is where Mr. Harsha's correct Guidelines fall) typically do not do any prison time at all.  In light of that fact, as well as Mr. Harsha's clear remorse and regret for how he has lived his life over the last several years, the defense respectfully submits that the appropriate sentence is time served (four months), plus three years of supervised release.  The defense respectfully suggests that the Court impose special conditions requiring mental health treatment and substance abuse counseling, and also require that Mr. Harsha attend to all other open legal matters as part of his supervised release.  Notably, Mr. Harsha has already been working hard to clear up his open cases during his four months at the D.C. Jail, and has already retained lawyers in Maryland and California to resolve his cases there.

## DISCUSSION

A.   **Ryan L. Harsha.**

As set forth in the Presentence Investigation Report ("PSR") and the letters from Mr. Harsha's loved ones (*see* Def.'s Notice of Filing), Mr. Harsha's childhood was somewhat unstable, with no real father and his mother and his grandmother separately handling his care during different stretches of time.  Mr. Harsha lost his mother in 2006 at age 49 to cancer, and also lost his best friend and his grandfather in approximately the same time frame.  Melissa. Cohen, Mr. Harsha's girlfriend, reports that when she met Mr. Harsha in the aftermath of these deaths he was suffering a significant sense of loss.

Mr. Harsha's life over the past several years has had two sides.  On the positive side, he has been a wonderful boyfriend to Melissa and surrogate father to Gretchen.  The PSR and the

letters written in support of Mr. Harsha speaks of someone who is genuinely involved in their lives and who has played (and continues to play) a very positive role, both emotionally and otherwise.  On the other side, however, it is clear that Mr. Harsha has developed a significant substance abuse problem in the last several years, perhaps as a way of filling the void from the losses he suffered in the years prior.  That substance abuse problem and the related hopelessness has doubtlessly contributed to his criminal conduct and other brushes with the law, including the arrests.

The good news is that Mr. Harsha now fully understands the terrible and self-destructive path he was on.  Both during his post-arrest interview, and during the debriefing where Mr. Harsha attempted to provide the government with substantial assistance, Mr. Harsha repeatedly thanked the law enforcement agents for arresting him and stopping his downward spiral.  Mr. Harsha realizes that this case may in some ways be the best thing that could have happened to him, as it will give him a welcome opportunity for a fresh start on the right side of things.

**B.      Offense Conduct.**

In this case, Mr. Harsha manufactured and sold fraudulent identification licences.  As a result, he was arrested on August 15, 2014, and has remained in custody since that time.  As of the date of sentencing, Mr. Harsha will have been imprisoned for well over four months.  Mr. Harsha has cooperated with the government since the day of his arrest, and debriefed at length regarding his own criminal conduct and the criminal conduct of others.[1]

---

[1]     The government's sentencing memorandum fails to note Mr. Harsha's attempts at cooperation and appears to give him zero sentencing credit for his efforts.  *See* discussion, *infra*.

C.    **The PSR and Guidelines.**

Preliminarily, the "face sheet" of the PSR incorrectly reflects a detainer for assault with a dangerous weapon in Anne Arundel County, Maryland.  As the Criminal History section of the PSR confirms, Mr. Harsha does not have an assault case from Maryland; he only has one assault case, from California, which he is already moving to settle.  This incorrect information should be deleted from the PSR.

In addition, Mr. Harsha respectfully objects to the assertion in paragraph 31 of the PSR that he used "sophisticated means" in committing the offense.  Mr. Harsha's conduct did not involve sophisticated means within the meaning of the Guidelines, and the enhancement therefore does not apply.

Section 2B1.1(b)(10) of the Guidelines adds two offense levels for those offenders who use "sophisticated means."  The commentary to U.S.S.G. § 2B1.1(b)(10) states as follows:

> For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense.  For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means.  Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. § 2B1.1(b)(10) cmt. 8(B).  Thus, the enhancement for sophisticated means is intended for those offenders who take complex steps to perpetrate or conceal their crimes, such as establishing offshore accounts or corporate shells to hide his assets, or otherwise trying to shield conduct or assets through intricate corporate structures.  *See, e.g., United States v. McCants*, 554 F.3d 155, 163 (D.C. Cir. 2009) (upholding enhancement where "McCants committed his

4

offense in multiple states and kept some of his false documents and device-making implements hidden in storage units rented under an alias. He also admits to using an allegedly legitimate business to conceal his offense from law enforcement."); United *States v. Gutierrez*, No. 06-0006, 2006 WL 1466914, *1 (D.D.C. May 24, 2006) (examples of "sophisticated means" includes conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts.")  The taking of complex steps to conceal criminal activity is why subsection (A) is grouped with subsection (C) of U.S.S.G. §2B1.1(b)(10), which applies to a defendant "relocat[ing] a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials," and subsection (B), which applies where "a substantial part of a fraudulent scheme was committed from outside the United States."

Here, with the exception of using the less-than-clever pseudonym "Lee Mayjors" for receiving packages, Mr. Harsha took no steps whatsoever to hide his conduct; in fact, he advertised his business on YouTube.  *See* PSR ¶ 17.  Mr. Harsha certainly did not relocate any aspect of his ID-making from the laptop in his apartment to someplace abroad, and did not use offshore accounts or corporate shells.

The PSR states that the enhancement applies "based on the defendant's coordination or securing, delivery, and use of 'official' materials obtained through a foreign country, for use in creating documents," PSR ¶ 31, which refers to Mr. Harsha's ordering of drivers' license laminates from Malayasia.  As an initial matter, Mr. Harsha is *already receiving* a two-level bump based on his use of the laminates.  As reflected in paragraph 32 of the PSR, Mr. Harsha has agreed to an enhancement for "possessing device-making equipment and/or authentication features," PSR ¶ 32, said "authentication features" being the laminates.

So the question is whether ordering the laminates from Malaysia – as opposed to, say, California – merits an additional enhancement as "sophisticated means." There is just nothing about the source of the laminates that would support applying the enhancement. Americans conduct modern commerce with foreign countries in millions of ways everyday. Products are often cheaper from places like China or Malaysia, and there is no evidence that Mr. Harsha chose to get the laminates from Malayasia to hide his conduct, as opposed to a consideration such as price or convenience. The "sophisticated means" enhancement does not apply here.

Based on the above, the defense respectfully submits that the two level enhancement included in paragraph 32 should not be applied. Mr. Harsha's total adjusted guideline range would then be a 10, for a Guidelines range of 6-12 months in Zone B. Because Zone B requires only *one month* of imprisonment (to be followed by a period of home detention), *see* U.S.S.G. § 5C1.1(c)(2), a time served sentence here would already be three months longer than the low end of Mr. Harsha's sentencing range.

D.      **The Government's Sentencing Memorandum.**

In its memorandum, the government requests a sentence of 14 months, describing that sentence as "in the middle of [the] Sentencing Guidelines range." Gov't Mem. at 4. That recommendation is surprising given Mr. Harsha's cooperation with the government from Day One of this case, which included truthfully debriefing about all of Mr. Harhsa's own conduct and also about the conduct of others, including the individuals and companies that make this crime possible by supplying the materials. In addition, although the government cites Mr. Harsha's open cases from other jurisdictions in support of a higher sentence, those cases involve arrests only, which cannot legally be relied upon to determine Mr. Harsha's sentence. Furthermore,

when Mr. Harsha resolves his open cases, he may well receive prison time in them; given that possibility, using them to increase his sentence here is essentially punishing Mr. Harsha twice for the same conduct.

Finally, a sentence of 14 months is far from "the middle" of Mr. Harsha's Guidelines range. As an initial matter, because the sophisticated means enhancement does not apply, Mr. Harsha's Guidelines range is in fact 6-12 months in Zone B. In Zone B, just *one month* of imprisonment is a Guideline-compliant sentence. Assuming *arguendo* that the two level enhancement for sophisticated means does apply, as the government argues, Mr. Harsha's range would be 10-16 months in Zone C. Operating in Zone C, the Court would comply with the Guidelines by dividing the low end of the range (10 months) into 5 months of imprisonment and 5 months of home detention. *See* PSR ¶ 106. Thus, the actual sentencing range (if the Court applies the sophisticated means enhancement) would be 5-16 months. Fourteen months is not "in the middle" of that range; it is almost the top.

## ARGUMENT

I. **THE 3553 FACTORS APPLIED TO THIS CASE SUPPORT A SENTENCE OF TIME SERVED.**

Respectfully, there is little to gain by extending Mr. Harsha's incarceration at this point; he either gets it or he does not, and if he does not the Court can violate his supervised release and incarcerate him for a very lengthy period. In addition, Mr. Harsha has a lot of work to do attending to his various legal matters and, perhaps even more importantly, himself. The defense respectfully submits that it would be best to let Mr. Harsha begin those processes on the outside as expeditiously as possible.

**CONCLUSION**

For the foregoing reasons, Mr. Harsha respectfully requests that the Court impose a sentence of time served, to be followed by three years of supervised release with special conditions including mental health and substance abuse counseling.

Respectfully submitted,

_____/s/_____
Jonathan S. Jeffress
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500, ex. 134